UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SMARTREND MANUFACTURING
GROUP (SMG), INC.,

       Plaintiff,                              Case Nos. 1:21-cv-1009, 1:22-cv-915

v.                                       Hon. Hala Y. Jarbou

OPTI-LUXX, Inc.,

       Defendant.

_____/

## OPINION

On November 29, 2023, a jury found that Defendant Opti-Luxx, Inc. ("OLI") infringed two patents owned by Plaintiff Smartrend Manufacturing Group (SMG), Inc. ("SMG") (Verdict, ECF No. 103). Before the Court are several post-trial motions. Although the cases were presented to the jury as if they were consolidated, there are two separate cases, one for each patent. Where it is necessary to distinguish between the two cases, the Court will refer to the applicable patent's shorthand description. Thus, Case No. 1:21-cv-1009 will be referred to as the "D930 Case" because that case involves Patent D932,930, a design patent. Case No. 1:22-cv-915 will be referred to as the "491 Case" because that case involves Patent 11,348,491, a utility patent.

Both parties have post-trial motions before the Court. OLI moves under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law notwithstanding the verdict (D930 Case, ECF No. 143; 491 Case, ECF No. 119.) SMG seeks a permanent injunction (D930 Case, ECF No. 135; 491 Case, ECF No. 110) and an order declaring exceptional and enhanced damages (D930 Case, ECF No. 138; 491 Case, ECF No. 113.) Finally, OLI opposes SMG's proposed bill

of costs (D930 Case, ECF No. 142; 491 Case, ECF No. 117) and moves for an alternative allocation of costs between the two cases (D930 Case, ECF No. 147; 491 Case, ECF No. 123).

The factual background and procedural history of these two cases were discussed at length in the Court's September 28, 2023 summary judgment opinion.  (D930 Case, ECF No. 89; 491 Case, ECF No. 56.)

## I. OLI'S RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

After the close of SMG's case at trial, OLI made an oral motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).  The Court denied that motion.  (D930 Case, ECF No. 123; 491 Case, ECF No. 97.)  Now, OLI renews its motion under Rule 50(b).

### A. Legal Standard

A court may grant a Rule 50(b) motion "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party."  *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).  A district court may not "reweigh the evidence or assess the credibility of witnesses."  *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007).

### B. D930 Case

OLI initially advanced several arguments supporting its renewed motion for judgment as a matter of law on the D930 patent.  It has since withdrawn a number of these.  (*See* D930 Case, January 9, 2023 Email, ECF No. 152-1.)  The Court will only address the non-withdrawn arguments.

#### 1. Transparent Lens

OLI argues that the jury could not have reasonably found that its accused product infringes the D930 patent because the accused product does not have a transparent lens.  Rather, the accused

2

product has a *translucent* lens and thus does not meet the required limitation in the D930 patent. But the Court has twice rejected OLI's argument that the term "transparent" cannot mean "translucent." (*See* D930 Case, Summ. J. Op. 13-15, ECF No. 89; D930 Case, November 28, 2023 Order Den. Oral Mot., ECF No. 121.) The Court now rejects this argument for a third time.

First, OLI's claim construction argument at this stage is misplaced—"[t]he purpose of a Rule 50(b) motion is not to rehash decisions that were made pre-trial, but to determine whether the jury verdict was supported by evidence presented at trial." *JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, No 09-14891, 2012 WL 12930710, at *4 (E.D. Mich. June 20, 2013) (quoting *Martin v. Howard Univ.*, No. 99-1175, 2006 EL 2850656, at *5 (D.D.C. Oct. 4, 2006)). Second, even if the Court were to reconsider this claim construction issue, OLI has not provided new case law or argument that persuades the Court its two previous rulings on this precise question were in error.

### 2. Jury Finding of Infringement

OLI contends that the design of the accused product is "plainly dissimilar" from the D930 patent. It also argues that, in the alternative, an analysis of the design in light of prior art precludes a finding of infringement. The Court rejected OLI's similar argument at the summary judgment stage, noting, "it is clear from the record that, when drawing all reasonable inference in favor of SMG, it has at least created a genuine dispute of material fact as to whether an ordinary observer would find the D930 patent and the accused product to be 'substantially the same.'" (Summ. J. Op. 19.) The Court also rejected OLI's Rule 50(a) motion on this matter. (D930 Case, Order Den. Def.'s Oral Mot. for J. as a Matter of Law 1, ECF No. 97.)

Design patent infringement is found when "two designs would appear 'substantially the same' to the ordinary observer[.]" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). When the question is a close call, prior art should be considered as "a frame of

reference[.]"  *Id.* at 677; *see also ABC Corp. I v. P'ship & Unincorporated Ass'ns*, 52 F.4th 934, 942 (Fed. Cir. 2022) ("Where a patented design and an accused product are not 'plainly dissimilar,' the court must conduct a threeway analysis comparing the accused product, the patented design, and the prior art.").  This is a task uniquely suited to jury resolution.  *See Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("[C]onclusions about reasonable jurors are difficult to make on an issue of this factual dimension.")  And the jury should focus its analysis on "overall designs, not similarities of ornamental features in isolation."  *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020).

As part of evidentiary record, the jury considered the D930 patent, samples of the accused product, technical drawings of the accused product, and expert testimony.  This is ample evidence from which a reasonable jury could find design patent infringement.  OLI stresses individual differences such as the lack of a black band around the outside perimeter of the accused product or the "larger radii" of its curves.  (D930 Case, Br. in Supp. of Mot. for J. as a Matter of Law 13-14, ECF No. 144.)  As discussed in the Court's summary judgment opinion (Summ. J. Op. 19), OLI is attempting to improperly "concentrate on small differences in isolation, distract[ing] from the overall impression of the claimed ornamental features."  *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303-04 (Fed. Cir. 2010).

OLI repeats several legal arguments that this Court has already rejected, including the categorization and impact of the D930 patent's functional elements as well as the relevance of prior art.  The Court will not reconsider these issues.  The only issue for Rule 50(b) is whether, based on the evidence, a reasonable jury could find that the accused product infringed the D930 patent.  The Court concludes that a reasonable jury could do so.  OLI's attempts to persuade

otherwise would require the Court to improperly reweigh evidence or assess witness credibility. The Court will not disturb the jury's finding.

### 3. Ordinary Observer

OLI argues that SMG failed to meet its burden to "introduce evidence as to the views of a qualified ordinary observer" because SMG's expert, Brent York, was an expert in lighting design, not school bus sign purchasing.  (D930 Case, Br. in Supp. of Mot. for J. as a Matter of Law 10-12.)  OLI fails to convince the Court that this distinction makes a difference.

First, the *Egyptian Goddess* test requires the jury to "compar[e] two items through the eyes of the ordinary observer," "giving such attention as a purchaser usually gives."  *Egyptian Goddess*, 543 F.3d at 670, 675-76.  To assist the jury in reaching the appropriate mindset, York testified as to who the ordinary observer would be ("the ones who make the purchasing decision[s]") and what they would likely focus on.  (D930 Case, Trial Tr. II, 334-36, ECF No. 98.)  Although York did not hold himself out to be an expert in the relevant types of purchasing decisions, OLI provides no authority that suggests this specific type of expert testimony is necessary.  In contrast, SMG provides numerous cases, albeit in out-of-circuit districts, holding the opposite.  *See, e.g.*, *Kitsch LLC v. Deejayzoo, LLC*, No. SACV1902556JAKRAOX, 2023 WL 4291445, at *8-9 (C.D. Cal. May 8, 2023) ("Because [the expert] offers his opinions through the lens of the hypothetical, ordinary observer based on his *design expertise* and *understanding* of the typical purchaser, these opinions are admissible.").  This Court, too, held that York "doesn't have to be the ordinary observer to give [his] opinion[.]"  (Trial Tr. II, 337.)

Second, if OLI wished to challenge York's qualifications to testify as to certain aspects of the legal test, it should have done so prior to his admission.  But OLI did not challenge York's admission.  (Trial Tr. II, 312.)  And despite its contention that "we didn't know [York's] testimony before he got up there[]" (*Id.* at 511), OLI was well aware of both the legal analysis governing this

case and of York's intended contribution to that analysis by way of his expert report. (*See* D930 Case, York Opening Rep. ¶¶ 28, 75, ECF No. 77-15.)  It is too late to disqualify the portion of York's expert testimony relating to the ordinary observer test.  The jury appears to have credited York's testimony as to who the ordinary observer would be in this case; it would be inappropriate for this Court to undertake a reassessment.

### 4. Conclusion

Drawing all reasonable inferences in favor of SMG, OLI has failed to persuade the Court that no reasonable jury could have found that OLI's accused product infringed the D930 Patent. SMG adduced sufficient evidence to support the jury's finding.  OLI's motion for judgment as a matter of law on the D930 Patent will be denied.

### C. 491 Case

As with the D930 Patent, OLI has withdrawn several arguments since filing its motion for judgment as a matter of law for the 491 Patent.  (*See* January 9, 2023 Email.)  The remaining arguments relate to two limitations of the 491 Patent which OLI contends SMG failed to demonstrate.

### 1. Frame

The 491 Patent includes a limitation requiring a "frame surrounding a perimeter of the translucent panel and forming a perimeter of the sign for mounting to the school bus[.]"  (491 Case, 491 Patent 22:62-63, ECF No. 32-1.)  In its summary judgment opinion, the Court construed the term frame to be "a separate, distinct component[.]" (Summ. J. Op. 41.)  As a result, the Court resolved the cross motions for summary judgment on the question of literal infringement in OLI's favor.  (*Id.* at 46.)  This left SMG to argue infringement under the doctrine of equivalents.  The Court concluded that there was sufficient evidence to permit a reasonable jury to find infringement based on the doctrine of equivalents:

While this Court found that the frame described in the 491 Patent was a distinct component, separate from the rest of the sign, there are certainly superficial similarities between the frame of the 491 Patent and the frame of the accused product.

The frame of the accused product, like the 491 Patent, surrounds the perimeter of the translucent panel and forms a perimeter of the sign for mounting the sign to the vehicle. The frame of the accused product, like the 491 Patent, allows for direct mounting via through-holes drilled into it. The primary difference, then, appears to be the integrality of the frame to the remainder of the sign. Whether this difference is substantial is a question for the jury.

(*Id.* at 55.)

OLI argues the jury had no reasonable basis to find infringement under the doctrine of equivalents. But SMG's expert, York, presented the following testimony while physically demonstrating with the accused product:

There's a frame . . . [t]he frame surrounds a perimeter of the translucent panel . . . [a]nd it forms a perimeter of the sign for mounting to the school bus. So the frame—here's the way to think about that. It performs exactly the same function. Surrounding. Mounting. It performs it in the same way . . . and it achieves exactly the same result . . . . That's important. What that means is you can't just say that well, it's separate. It does everything the same way. That still infringes the claim.

(Trial Tr. Vol. 345-346.) York's testimony maps onto one of the "linguistic framework[s]" courts use to determine equivalence, "the so-called 'triple identity test'[.]" *Warner-Jenkinson Co. v. Hilton Davis Chem. Co*, 520 U.S. 17, 39-40 (1997). This test focuses "on the *function* served by a particular element, the *way* that element serves that function, and the *result* obtained by that element." *Id.* This test is also commonly called the function-way-result test. *See, e.g.*, *BOS GmbH & Co. KG v. Macauto USA, Inc.* 515 F. Supp. 3d 651, 675 (E.D. Mich. 2021).

Ultimately, "infringement by equivalents is an issue of fact ordinarily preserved for the jury[.]" *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1319 (Fed. Cir. 2000). York's expert testimony is evidence that fits within the proper legal framework. The jury credited York's testimony when it found in SMG's favor. OLI argues that the accused product

"has no 'frame' as understood by persons skilled in the art and reasonable minds could come to but one conclusion that the [accused product] does not contain a frame that [is] a separate, distinct component."  (491 Case, Br. in Supp. of Mot. for J. as a Matter of Law 5, ECF No. 120.)  But OLI's argument is akin to reverting the equivalents analysis back to a literal infringement analysis. Under the equivalents analysis, the only evidence the jury had as to how persons skilled in the art would understand frame equivalence was York's testimony—and York testified to precisely the opposite of OLI's argument.  Perhaps reasonable minds could disagree with York, but reasonable disagreement falls well short of the substantial burden a Rule 50(b) motion entails.

 OLI makes one additional argument related to the frame limitation: claim vitiation.  Claim vitiation is a doctrine of equivalents formulation that "has its clearest application 'where the accused device contain[s] the antithesis of the claimed structure." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013).  It is not clear if OLI raises a new legal argument or merely reframes the well-established equivalents tests discussed at length during the trial and above.  If this is a new legal argument, it is not properly before the Court.  OLI raises claim vitiation for the first time in its Rule 50(b) motion.  It was not raised in OLI summary judgments motions, nor at trial, nor in OLI's Rule 50(a) motion.  It is too late to raise a new legal theory now.  *See, e.g.*, *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 493 (6th Cir. 2008) (concluding a legal argument was waived when raised for the first time in a Rule 50(b) motion "because such a motion could not be used 'as a vehicle to introduce a legal theory not distinctly articulated in its . . . motion for a directed verdict'" (internal quotation marks omitted)).

However, to the extent this is a simple reframing of the other equivalents tests, the claim vitiation argument should not reach a different result.  As the Federal Circuit has explained, "vitiation applies when one of skill in the art would understand that the literal and substitute

limitations are not interchangeable, not insubstantially different, and when they do not perform substantially the same function in substantially the same way to accomplish substantially the same result." *Brilliant Instruments*, 707 F.3d at 1347.  In other words, the test is "akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests." *Id.*  As discussed, SMG presented sufficient evidence for a reasonable jury to conclude infringement under those frameworks.

### 2. Spacer

OLI also argues that SMG failed to present sufficient evidence for a reasonable jury to conclude that the accused product meets the "spacer" limitation[1] of the 491 Patent.  While OLI raised this issue during its summary judgment motion, it did not raise it in its Rule 50(a) motion at the close of SMG's case.  (*See generally* Trial Tr. II, 524-530.)  This alone is reason enough to reject OLI's argument.  *See Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 780 (6th Cir. 2020) ("A Rule 50(b) motion is only a renewal of the preverdict motion and it can be granted only on grounds advanced in the preverdict motion." (internal quotation marks omitted)).

Regardless, SMG did present sufficient evidence to support the jury's finding that the accused product met the spacer limitation.  In his testimony, York discussed the importance of space in illuminated signage and demonstrated how, in his opinion, the accused product contained not one, but two spacers.  (Trial Tr. II, 350-351; *see also id.* at 455, 456-462.)  OLI's own witness, Colin Carpenter, also provided testimony which a reasonable jury could have considered to be an admission that the accused product met the spacer limitation:

---

[1] Limitation 1.6 of the 491 Patent reads, "wherein the translucent panel is spaced by a spacer from the LEDs thereby creating a gap between the LEDs and the translucent panel." (491 Patent 22:65-67.)

Q:      All right.  In this—in your sign, the Opti-Luxx sign, as shown in your drawing here, what's providing the space between the LED and the lens?

A:      The—so the lens rests on a shelf in there.  So there's—and that little shelf is recessed.

(491 Case, Trial Tr. III, 580, ECF No. 104.)

Taken together, and with no expert testimony to rebut York's conclusion, a reasonable jury could have concluded that the accused product met the spacer limitation of the 491 Patent.  OLI has not met its substantial Rule 50(b) burden to overturn the jury's finding.

Note, the Court also declines to evaluate OLI's remaining arguments about the effect of patent prosecution history on the limitations involving "spacer" and the "weather-tight seal."  (*See* Br. in Supp. of Mot. for J. as a Matter of Law 18-22.)  These arguments relate to matters of law which the Court has either previously ruled on or which have been raised too late in the litigation and are waived.  At any rate, none of these arguments were appropriately raised in OLI's Rule 50(a) motion and are thus not properly before the Court on the present motion.

### 3. Conclusion

Drawing all reasonable inferences in favor of SMG, OLI has failed to persuade the Court that no reasonable jury could have found that OLI's accused product infringed the 491 Patent.  SMG adduced sufficient evidence to support the jury's finding.  OLI's motion for judgment as a matter of law on the 491 Patent will be denied.

## II. SMG'S MOTION FOR A PERMANENT INJUNCTION

SMG seeks a permanent injunction preventing OLI from further infringing both the D930 Patent and 491 Patent by continuing to sell its illuminated school bus sign ("Infringing Product").  (*See generally* Mot. for Permanent Inj.)

### A. Legal Standard

A patent holder seeking a permanent injunction must satisfy a four-factor test.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Here, SMG must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the hardships between [SMG] and [OLI], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.*

### B. Irreparable Injury

Prior to *eBay*, many lower courts applied "a general rule that an injunction normally will issue when a patent is found to have been valid and infringed."  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).  Although this general rule is now no longer applicable, "it does not follow that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude."  *Id.*  To account for this "fundamental nature," courts often consider "the nature of the competition between the parties."  *Id.*  Irreparable harm is likely to be present in situations involving direct competitors where there is "loss in market share and access to potential customers resulting from [the infringing party's] introduction of infringing [products.]"  *Id.* at 1151.  *See also, e.g.*, *TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 793 (Fed. Cir. 2019) ("Head-to-head competition and lost market share tend to evidence irreparable harm.").

SMG and OLI are direct competitors in the school bus lighting industry.  (*See, e.g.*, 491 Case, Def.'s Mot. to Reconsider 11/22/23 Order 2, ECF No. 86.)  According to unrebutted trial testimony, this industry has three major bus manufacturers—Navistar, Blue Bird, and Thomas Buses.  (491 Case, Trial Tr. I, 104.)  By late 2021, SMG had secured the business of two of these manufacturers, Navistar and Thomas Buses, and was actively pursuing Blue Bird.  (*Id.*)

Apparently, SMG had made headway with Blue Bird and appeared to be on the brink of securing their business when "Blue Bird sends an e-mail and says, sorry to get your hopes up, but we're flushing this project in favor of a lower cost supplier . . . that supplier was [OLI]."  (*Id.* at 105.) This is not disputed by OLI.

In other words, SMG has put forth evidence showing "[h]ead-to-head competition and lost market share[.]"  *TEK Global*, 920 F.3d at 793.  In fact, SMG asked for monetary damages equal to its lost profits (*see* Trial Tr. III, 493), which the jury awarded (491 Case, Jury Verdict, ECF No. 103).  A lost profits award "squarely supports a finding of irreparable harm."  *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) (concluding that a jury award of lost profits necessarily implied a jury finding of lost market share and thus irreparable harm).

OLI does not dispute that it is a direct competitor with SMG, nor that its success with Blue Bird resulted in a loss of market share for SMG.  Instead, OLI posits that "SMG cannot establish that the competition between SMG and [OLI] was meaningful in a manner that would result in irreparable harm to SMG."  (D930 Case, Def.'s Resp. in Opp'n to Pl.'s Mot. for Perm. Injunction 3, ECF No. 145.)  Said another way, OLI argues that SMG was already too successful to be harmed by any market share gained by OLI.

OLI's argument is unpersuasive.  First, it cites no authority directly supporting the idea that head-to-head competition and lost market share matter *unless* that competition is between competitors of different sizes.  Second, the only authority OLI does cite, *Nichia Corp. v. Everlight Americas, Inc.*, 855 F.3d 1328 (Fed. Cir. 2017), involved parties who primarily sold to different types of customers (distributors versus consumers) and only overlapped in a "very small area of possible competition."  *Id.* at 1342.  In fact, the court in *Nichia* concluded that "there was an

12

absence of actual competition." *Id.* (internal quotation marks omitted.)  Here, the Court cannot conclude that there is an absence of actual competition simply because SMG secured two of the three major customers in the market while OLI secured only one.  Indeed, this is a far cry from the *Nichia* case where the plaintiff "identified 516 sales opportunities, with [the defendant] as a competitor in only 3." *Id.*  SMG has identified three sales opportunities—OLI is a competitor in all three.

SMG has established direct competition and lost market share.  These are the hallmarks of irreparable injury in a patent infringement case.

### C. Remedies Available at Law

Money damages are less likely to be adequate when a patentee "will continue to suffer irreparable harm due to lost market share, lost business opportunities, and price erosion[,]" absent a permanent injunction.  *Robert Bosch*, 659 F.3d at 1155.  The continuing nature of such harm, especially when the infringing acts may "significantly change the relevant market," can make monetary damages "difficult to quantify." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

OLI has provided "no reason to believe that [it] will stop infringing, or that the irreparable harms resulting from its infringement will otherwise cease, absent an injunction." *Robert Bosch*, 659 F.3d at 1155.  Rather, it offers two arguments as to why remedies at law are adequate.  First, OLI suggests that the mere fact that the jury awarded lost profits is enough to show that money damages are in fact quantifiable and thus more likely to be adequate.  Second, OLI argues that a royalty or license agreement is a more appropriate remedy and asks this Court to direct the parties to negotiate.

The Court is not persuaded by either argument.  First, OLI misunderstands the relevance of the jury award.  The jury awarded *past* lost profits.  These lost profits were indeed quantifiable,

13

but this says nothing about the *continued* or *future* harm stemming from OLI's infringement.  As in *i4i Ltd.*, OLI's infringement has the potential to significantly change the relevant market by introducing a lower cost product and siphoning off the business of one of three major bus manufacturers.  The harm from OLI's ongoing infringement is difficult to quantify, and a jury award for past lost profits does not meaningfully alter this observation.

Second, the Court concludes that an ongoing license or royalty payment in lieu of a permanent injunction is not warranted here.  OLI cites instances where courts have ordered such arrangements after concluding that a permanent injunction was otherwise inappropriate.  *See, e.g.*, *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1302, 1315 (discussing the district court's conclusion that a permanent injunction was not warranted due in part to an absence of irreparable harm and noting that, in such circumstances, a district court "may wish to allow the parties to negotiate a license amongst themselves . . . before imposing an ongoing royalty").  But the potential availability of an ongoing royalty arrangement does not amount to a general proposition that royalties are preferable to permanent injunctions in most instances.

OLI's citation of *Bard Peripheral Vascular, Inc. v. W.L. Gore Associates, Inc.*, 670 F.3d 1171 (Fed. Cir. 2012), illustrates this latter point.  In *Bard Peripheral*, a case dealing with vascular grafts used in cardiac surgeries, the Federal Circuit approved the district court's royalty award, noting that "[t]he award of an ongoing royalty instead of a permanent injunction to compensate for future infringement is appropriate in *some* cases."  *Id.* at 1192 (emphasis added).  The district court had determined that an injunction would not be in the public interest and set a royalty rate on the infringing medical product instead.  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, No. CV-03-0597-PHX-MHM, 2009 WL 920300, at *5-9 (D. Ariz. Mar. 31, 2009).  After reviewing the equitable factors, the district court concluded that "the value of the Patent Act and

the protections that it offers to the patentee are sometimes outweighed by the Court's equitable concern for the greater public good, particularly in the realm of vascular surgery and other potentially life saving technologies." *Id.* at *8.

Thus, the cases that OLI cites do not support its proposition that royalties are generally preferable to permanent injunctions. Rather, they suggest that royalties can be appropriate when a permanent injunction is *otherwise* not appropriate, as when there is no irreparable harm or where the greater public interest (*e.g.*, public health) is at stake. This falls short of OLI's contention that courts are increasingly disfavoring permanent injunctions.

Here, SMG has "never licensed the Asserted Patents. Nor would [SMG] ever license them to a competitor." (491 Case, Smith Decl. ¶ 3, ECF No. 111-1.) And beyond OLI's suggestion that a royalty could be adequate, no party has presented any evidence establishing what a fair royalty would be in this case. The Court thus has no basis to determine a fair royalty, and it is disinclined to force the parties to the negotiating table to determine one. Rather, the Court concludes that monetary damages would be inadequate to compensate SMG based on the continuing irreparable harms inherent in OLI's infringement, the inherent difficulty in quantifying such harms, the lack of any indication that OLI will cease to infringe absent an injunction, and the lack of any special circumstances that would warrant an alternative remedy such as an ongoing royalty.

### D. Hardship Balancing

The third equitable factor "assesses the relative effect of granting or denying an injunction on the parties." *i4i Ltd.*, 598 F.3d at 862. A court may consider several factors in its analysis, including "the parties' sizes, products, and revenue sources." *Id.* A court should not, however, give much weight to the harmful effects an injunction would have on a party who based their business on an infringing product. *See Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1306 (Fed. Cir. 2012) ("As we have noted, '[o]ne who elects to build a business on a product found to infringe

cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.'" (quoting *Broadcom Corp. v. Qualcomm Inc*, 543 F.3d 683, 704 (Fed. Cir. 2008))).

The Court does not have significant record evidence detailing the parties' relative sizes, products, or revenue sources.  But OLI does offer numerous products other than the infringing sign, including "a full line of lights for school buses and commercial vehicles," and "a driver alert sign."  (Trial Tr. III, 560-561.)  As OLI notes in its reply to SMG's motion, "if a permanent injunction is granted, [OLI] could feasibly offer an alternative product."  (Def.'s Resp. in Opp'n to Pl.'s Mot. for Permanent Inj. 6.)  This of course tips in favor of granting the injunction, not against it.  *Cf. Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1379 (Fed. Cir. 2020) (reversing the district court's grant of a permanent injunction because it had failed to consider the lack of non-infringing products for two out of five of the defendant's product lines).

On the one hand, SMG has suffered irreparable harm to its business due to OLI's infringement.  The harm will be ongoing absent an injunction.  Although not dispositive, the Court finds it significant that OLI's infringement was found by a jury to be willful.  (Jury Verdict 3.)  On the other hand, OLI will undoubtedly suffer from a permanent injunction, losing sales and market share.  But two considerations discount the impact of this harm to OLI in the Court's analysis. First, the harm would be the direct result of OLI's own infringement.  Second, OLI has admitted that it has other product lines and would be able to feasibly offer an alternative product.  Thus, the balance of hardships clearly favors SMG.

### E. Public Interest

"The touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public form the injunction's adverse effects."  *TEK Global*, 920 F.3d at 793.  Judicial protection of property rights in inventive technology is always a relevant public interest factor favoring a

16

permanent injunction, even if it is not dispositive. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013).  And cheaper goods alone are not a compelling public interest factor disfavoring a permanent injunction because "[w]hile the general public certainly enjoys lower prices, cheap copies of patented inventions have the effect of inhibiting innovation and incentive." *Id.*

OLI primarily asserts that "the public has an overwhelming interest in the safety of children," and that enjoining the sales of its infringing product harms that interest.  (Def.'s Resp. in Opp'n to Pl.'s Mot. for Permanent Inj. 7.)  But OLI has not established that its products are safer than SMG's or that SMG would be unable to meet customer demand.  To the contrary, SMG testified as to the safety of its products (Trial Tr. I, 162-163) and that it had the manufacturing capacity to cover, for instance, the lost Blue Bird business (*id.* at 194-195).

The Court concludes that the public interest is best served by enforcing SMG's patent rights.  While OLI's asserted public interest of child safety is indeed important, there is no indication that a permanent injunction will harm that interest.  SMG has the capacity to cover the portion of the market that would be served by OLI, and SMG's property rights in its inventive technology should be respected.

## F. Scope

The Court finds that all four equitable factors weigh in favor of granting a permanent injunction.  The Court also concludes that SMG's proposed injunction is appropriately narrow in scope and otherwise conforms to the requirements of Federal Rule of Civil Procedure 65.

OLI makes two arguments against this conclusion, but neither is persuasive.  First, OLI contends that the proposed injunction is inappropriate because it extends beyond the term of the asserted patents.  This is not true.  The proposed injunction limits itself to enjoining infringing activity (D930 Case, Am. Proposed Inj., ECF No. 150-4), which logically cannot extend beyond

17

the term of the patents.  Second, OLI takes issue with the language in the injunction that refers to "any other product no more than colorably different from an Infringing Product."  This language comes directly from Federal Circuit precedent.  *See United Constr. Prods. Inc. v. Tile Tech, Inc.*, 843 F.3d 1363, 1371 (Fed. Cir. 2016) ("this court has held that injunctions have satisfactory scope when they prohibit infringement of the patent by the adjudicated devices and infringement by devices *not more colorably different* from the adjudicated devices." (emphasis added, internal quotations omitted)).

### G. Conclusion

SMG's proposed permanent injunction is appropriately narrow in scope and is well supported by all four equitable factors.  SMG's motion for a permanent injunction will be granted.

## III. SMG'S MOTION FOR EXCEPTIONAL CASE AND ENHANCED DAMAGES

SMG seeks attorney's fees and treble damages under 35 U.S.C. §§ 285 and 284, respectively.

### A. Attorney's Fees Under § 285

"The Court in exceptional cases may award reasonable attorneys fees to the prevailing party."  35 U.S.C. § 285.  An "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

Courts are to consider the totality of the circumstances under a preponderance of the evidence standard.  *Id.* at 554, 557.  Those circumstances may include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 554

n.6; *see also Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1387 (Fed. Cir. 2017).

SMG is the prevailing party for both cases.  It argues that OLI's willful infringement, weak litigation positions, and litigation misconduct make this case exceptional.  The Court disagrees.

The jury found that OLI's infringement was willful.  (Jury Verdict 3.)  While a finding of willfulness may be "among the reasons that a court may find a case to be exceptional," *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 516 (Fed. Cir. 2014), "an attorney fee award is not mandatory when willful infringement has been found," *WhitServe, LLC v. Comput. Packages, Inc.*, 694 F.3d 1336, 1349 (Fed. Cir. 2012).  *See also SiOnyx LLC v. Hamamatsu Photonic K.K.*, 981 F.3d 1339, 1355 (Fed. Cir. 2020).  OLI's willfulness, then, must be considered as one part of the totality of circumstances.

In this regard, the merit of OLI's defense is instructive.  SMG moved for summary judgment only as to the 491 Patent, which this Court denied.  And OLI scored a significant victory when the Court granted summary judgment on the question of literal infringement.  Thus, key questions remained for the jury to decide at trial—questions that went to the heart of the merits of this case.

While SMG argues that "[t]his case was not close—the jury found willful infringement in less than two hours" (491 Case, Pl.'s Reply in Supp. of Motion for Exceptional Case and Enhanced Damages 13, ECF No. 125), the Court disagrees—particularly with respect to the 491 Patent. Here, the jury acted reasonably in finding infringement under the doctrine of equivalents, but the opposite finding would have been reasonable as well.  SMG stresses that OLI presented minimal evidence to support its defense and failed to offer expert testimony.  But the evidentiary burden was not OLI's to bear.  The burden remained with SMG throughout the trial and the jury may have,

for example, found noninfringement under the doctrine of equivalents by choosing to discount SMG's expert testimony.

The closeness of this case cuts against the egregiousness of OLI's willful infringement. Although other aspects of the case, such as OLI's asserted invalidity defenses and its antitrust and tortious interference counterclaims, were not nearly as close a call as the core infringement issue, the Court views these as relatively run-of-the-mill defense strategies that naturally changed over the course of the litigation.  In other words, this case is less an "egregious case of misconduct" than it is a "garden-variety hard-fought patent case."  *Presido Components, Inc. v. Am Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017).  The Court is thus unconvinced that OLI's conduct alone, separate from its attorney's conduct, merits an attorney's fee award under § 285.

This leaves the conduct of OLI's counsel, namely Don Darnell.  SMG argues that Darnell's misconduct occurred throughout the course of the litigation.  It emphasizes Darnell's failure to cooperate during discovery, his failure to cooperate in pre-trial matters such as the preparation of the joint final pre-trial order, and his improper conduct at trial.  Much of the misconduct is outlined in a declaration by SMG's attorney.  (*See generally* 491 Case, Cunningham Decl., ECF No. 114-4).

As an initial matter, the Court credits SMG's account of Darnell's conduct.  The Court experienced some of the conduct firsthand (*see* 11/22/2023 Order Sanctioning Def.), while other conduct is corroborated by evidence included in SMG's motion for exceptional damages.  To be sure, the Court does not condone Darnell's conduct and shares in SMG's frustration.  However, Darnell's conduct is not so far out of the ordinary as to warrant a finding of an exceptional case under § 285.  SMG has not, for instance, shown that Darnell's litigation conduct was due to bad faith.  *See Horatio Washington Depot Techs. LLC v. Tomar, Inc.*, 844 F. App'x 368, 369 (Fed. Cir.

2021) (upholding district court's denial of attorney's fees under § 285 where district court considered the lack of bad faith as party of its totality of the circumstances analysis).

Further, the Court finds it significant that OLI received both direct monetary sanctions (11/22/2023 Order Sanctioning Def.) and several evidentiary exclusions (*see, e.g.*, 491 Case, Order Regarding Mots. in Limine, ECF No. 79) as a direct result of Darnell's conduct.  *See, e.g.*, *vPersonalize Inc. v. Magnetize Consultants Ltd.*, 841 F. App'x 234, 238-39 (Fed. Cir. 2021) (upholding district court's denial of attorney's fees under § 285 despite discovery misconduct where district court had issued sanctions); *Khan v. Hemosphere Inc.*, 825 F. App'x 762, 772 (Fed. Cir. 2020) (same where "the conduct described in the motion [for attorneys' fees] was largely identical to the conduct already presented in the defendants' earlier sanctions motion and was already considered by the court in granting sanctions against the [plaintiffs]").  While the issued sanctions do not completely cover the litigation misconduct about which SMG complains, the Court does not find the additional misconduct so egregious as to warrant attorney fee shifting.

Considering the substantive strength of OLI's litigating position, the jury's finding of willful infringement, and the manner in which the case was litigated, the Court concludes that this case is not so exceptional as to award attorney's fees under § 285.  OLI's core merits argument was relatively strong, as indicated by key summary judgment wins and the need for a jury to weigh in on both patents.  This undercuts the impact of the willfulness finding.  And at bottom, the manner in which the case was litigated likely contributed to OLI's eventual loss as key evidence was excluded and defenses were dropped at trial.  The Court declines to push the loss further by approving the fee shifting SMG requests.

### B. Enhanced Damages Under § 284

Courts may, but are not required to, consider several factors when determining whether to enhance damages under 35 U.S.C. § 284.  These factors, called *Read* factors, include:

(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct[.]

*Liquid Dyanamics Corp v. Vaughan Co., Inc.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (cleaned up, citing *Read Corp. v. Portec. Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992)).

SMG focuses primarily on the first factor, deliberate copying, which is supported by the jury's finding of willfulness.  The Court agrees that this factor weighs in favor of enhanced damages.

SMG also argues that all remaining factors, except factor (9), favor enhancement.  It points to OLI's litigation conduct, discussed at length above, as pushing factor (3) in SMG's favor.  It also emphasizes the length of jury deliberations to suggest that factor (5), closeness, favors SMG.  Finally, it argues that OLI's infringement has endured since it first encountered SMG's product in 2019, that OLI has taken no steps to remedy the infringement, and that a consistent refusal to stop suggests a motivation for harm, thus factors (6), (7), and (8) should each be construed towards SMG.  Finally, SMG points to the lack of evidence regarding good-faith belief, factor (2), and financial hardship, factor (4), as favoring enhancement while the lack of evidence regarding concealment, factor (9), should be viewed neutrally.

The Court largely disagrees with SMG's analysis of the remaining *Read* factors.  For one, SMG as the plaintiff and movant bears the burden on this motion.  A lack of evidence regarding good faith belief, financial hardship, and concealment thus does not favor SMG.  Because the *Read* factors are not mandatory, the Court will view these neutrally.

Further, the Court disagrees with SMG's analysis of closeness. The length of the jury's deliberation is less important than the fact that the jury had to deliberate in the first place. As discussed above, the fundamental merits of this case were close, particularly as it relates to the 491 Patent. The jury was reasonable in its finding, but it would have been reasonable for it to decide another way. Factor (5) thus weighs in OLI's favor.

The closeness of the case cuts against the importance of the jury's willfulness finding. As a result, it also undercuts factors (6), (7), and (8) dealing with the length and degree of OLI's misconduct as well as its motivation. SMG's cursory analysis of these factors is unconvincing, but even if the Court were convinced that these cut in SMG's favor, they would do so only marginally considering the case's closeness.

Neither SMG nor this Court are required to fully analyze the *Read* factors, but SMG has failed to persuade the Court that enhanced damages are warranted. Neither OLI's conduct in developing and marketing its product, nor OLI's attorney's conduct individually or together warrant treble damages under § 284. This is primarily due to the closeness of the case, despite the jury's finding of willfulness.

## IV. ALLOCATION OF COSTS

SMG submits its bill of costs pursuant to Federal Rule of Civil Procedure 54(d)(1). It asks that the Court award $21,289.40 in both cases, to be paid once. It also asks for an additional $497 in the 491 Case, for a total award of $21,786.40. OLI does not dispute the amount, but it does dispute the manner of allocation. OLI argues that instead of the Court awarding the overlapping $21,289.40 in both cases, the Court should instead allocate the award 50/50.

SMG counters that a 50/50 allocation would result in a reimbursement shortfall should one case be overturned on appeal because the total costs incurred were necessary for *each* case. OLI appears to recognize this as it notes that "all of the witnesses' testimonies were relevant to both

cases." (Def.'s Mot. to Allocate Costs 2). Both SMG and OLI cite case law to support their position.

The Court concludes that SMG has the better argument. These cases "have in many respects been handled jointly" such that the two should be viewed "as a continuum of proceedings necessary to achieve the relief finally granted." *Montera v. Premier Nutrition Corp.*, No. 16-cv-06980-RS, 2023 WL 5054225 (N.D. Cal. Aug. 7, 2023). Allocating the costs 50/50 would result in under-compensation should one case be overturned on appeal since virtually all costs were necessary in achieving each result. Rather, in that eventuality, OLI could potentially submit its own bill of costs post appeal.

## V. CONCLUSION

For the reasons stated above, the Court will: (1) deny OLI's renewed motion for judgment as a matter of law on infringement of the D930 Patent; (2) deny OLI's renewed motion for judgment as a matter of law on infringement of the 491 Patent; (3) grant SMG's motion for a permanent injunction; (4) deny SMG's motion for exceptional case and enhanced damages; and (5) deny OLI's motion opposing SMG's proposed bill of costs.

An order will enter consistent with this Opinion.

Dated: February 23, 2024                         /s/ Hala Y. Jarbou
                                                 HALA Y. JARBOU
                                                 CHIEF UNITED STATES DISTRICT JUDGE